# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER E. MATTISON     :

        **Plaintiff**     :

    v.                   :       3:12-cv-2557
                         :       (JUDGE MARIANI)

EAST STROUDSBURG     :
UNIVERSITY and DOREEN     :
TOBIN     :
                         :

        **Defendants**     :

## MEMORANDUM OPINION

The present matter is before the Court by way of Plaintiff's Motion for Preliminary Injunction (Doc. 4). For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction will be denied.

## STATEMENT OF FACTS

On December 20, 2012, Plaintiff Christopher E. Mattison ("Plaintiff") filed the above-captioned matter with this Court seeking damages and injunctive relief from Defendants East Stroudsburg University ("ESU") and Doreen Tobin ("Tobin")(collectively, "Defendants"), for alleged violations of Plaintiff's civil rights and for breach of contract. (*See* Complaint at ¶¶ 33-54, ECF Dkt. 1.)

The Complaint alleges that Plaintiff matriculated as a full-time undergraduate student at East Stroudsburg University in August of 2012, and that he paid all tuition, fees, room and board for the fall semester. (*See* Compl. at ¶ 6.) The Complaint further alleges that

"Plaintiff completed ESU's Fall 2012 Semester in good academic standing and without any disciplinary infractions, other than the matter which gives rise to this action, and as a member of the ESU varsity baseball team." (*See* Compl. at ¶ 7.) Plaintiff's Complaint avers that in exchange for payment, "ESU has promised to provide Plaintiff with some of the college-level courses necessary to earn a bachelor's degree . . . provided that Plaintiff agrees to the express and implied terms of ESU's student policies regarding academics, behavior and privacy as set forth in the Student Code of Conduct which is stated in the 2012-2014 Student Handbook." (*See* Compl. at ¶ 9.)

On October 1, 2012, ESU Police Officer Carlos M. Aussie, Jr. ("Aussie"), went to the room of Jay Young ("Young") in Hawthorne Hall to investigate the possibility of the possession of a controlled substance. (*See* Compl. at ¶ 11.) Aussie found several students in Young's room, and although Plaintiff denied being in possession of marijuana, he admitted to Aussie that he had smoked it earlier in the day. (*See* Compl. at ¶ 11.)

Plaintiff was notified by written letter on October 4, 2012, "that he must attend a 'meeting' on October 16, 2012, with an unidentified person, for the events alleged to have occurred on October 1, 2012, in Hawthorne Hall room 425." (*See* Compl. at ¶ 12; *see also* Notification of Charges Letter, ECF Dkt. 14-1, Exh. D.) Plaintiff maintains that "[t]he letter did not advise Plaintiff of either his hearing options or his hearing rights as set forth in the 2012-2014 Student Handbook." (*See* Compl. at ¶ 12.) Aussie also filed a disorderly conduct citation against Plaintiff for violation 18 Pa. Cons. Stat. § 5503a(4), "for allegedly

smoking marijuana." (*See* Compl. at ¶ 13.) Then, on October 16, 2012, Plaintiff alleges

that he attended the above-referenced "meeting" and was informed by Hearing Officer Jeter

Smith ("Smith") that Smith was going to "recommend a limited punishment," which included

"a deferred suspension, parental notification, attendance at the Marijuana 101 class and

attendance at the Success Plan class." (*See* Compl. at ¶ 14.) Plaintiff avers that Smith

explained "what the sanctions would entail," and "asked Plaintiff if he wished to accept those

sanctions or whether he wished to wait twenty-four (24) hours before deciding whether he

wished to request either a formal school disciplinary hearing or an informal school

disciplinary hearing." (*See* Compl. at ¶ 14.) Plaintiff maintains that Smith presented him

with an ESU "Disciplinary Incident Notification" form and had Plaintiff sign in three places.

(*See* Compl. at ¶ 14; *see also* Disciplinary Incident Notification Form, ECF Dkt. 4-1, Exh. A.)

Plaintiff further maintains that "[a]t no time during this meeting with Mr. Smith was Plaintiff's

status as a member of the ESU varsity baseball team discussed." (*See* Compl. at ¶ 14.)

As a student athlete at ESU, Plaintiff is subject to the regulations set forth in the

Student Code of Conduct, the Student Handbook, and the Student Athlete Handbook. In

addition, Plaintiff is subject to NCAA Regulations governing the conduct of student athletes.

The Student Handbook 2012-2014 bars the "[i]llegal use, possession or sale of narcotics,

drugs, synthetic substances, or drug-related paraphernalia." (*See Student Handbook* 2012-

2014 at 42, ECF Dkt. 14, Exh. A.) "No student may possess, consume, or be in the

presence of narcotics, drugs, synthetic substances, or drug-related paraphernalia anywhere

on campus." (*See id.*)

Further, the Student Athlete Handbook details additional regulations with which

student athletes are expected to comply. The Student Athlete Handbook states, in pertinent

part:

> All students have the responsibility to comply with the regulations stated
> within the University's Student Code of Conduct as presented in the ESU
> Student Handbook . . . Violations of the University Student Code of Conduct
> may result in probation, suspension, or dismissal from the University and/or
> the Athletics Program.

(*See* Student Athlete Handbook at 3-4, ECF Dkt. 14, Exh. H.)

In addition, the NCAA requires students to "be in good academic standing according

to the standards of your institution," in order to be eligible to compete. (*See* NCAA

Regulations – Division II for Academic Year 2012-2013, ECF Dkt. 14, Exh. G.)

Plaintiff was found to have committed three infractions with regard to the Student

Code of Conduct:

> 10. Illegal use, possession, or sale of narcotics, drugs or drug-related
> paraphernalia.
> 16. Citations or convictions or violations of Local, State or Federal Law.
> 23. Violations of other University Policies and regulations.—Community
> Standards.

(*See* Student Code of Conduct Violation Form, ECF Dkt. 14-1, Exh. C.)

Plaintiff alleges that on October 16, 2012, he arrived for baseball practice and was

advised by his coach that he was suspended from participation on the baseball team for the

remainder of the 2012-2013 academic year in connection with the October 1, 2012 incident. (*See* Compl. at ¶ 15.) Plaintiff insists that he was not "aware that he was going to be suspended from the baseball team," (*see* Compl. at ¶16), and that on October 19, 2012, he contacted ESU Vice President of Student Affairs Doreen Tobin ("Tobin") to discuss his suspension (*see* Compl. at ¶ 17). Tobin met with Plaintiff on November 7, 2012, and informed Plaintiff that she would consider his request to vacate the baseball suspension. (*See* Compl. at ¶ 17.) Plaintiff asserts that on December 11, 2012, Tobin met with Plaintiff and orally informed him that she would not vacate the suspension. (*See* Compl. at ¶ 20.)

Plaintiff asserts that he is a "professional baseball prospect recognized by Major League Baseball who cannot miss a collegiate baseball season without being removed from Major League Baseball's prospect list." (*See* Compl. at ¶ 23.) Plaintiff claims that Defendants' actions deprive him of contractual and constitutional rights, "which ha[ve] been to his great financial loss." (*See* Compl. at ¶¶ 22-25.)

On January 7, 2013, Plaintiff filed a Motion for Preliminary Injunction (Doc. 4.1) seeking reinstatement on the ESU varsity baseball team. Plaintiff's motion only addresses constitutional issues.

## STANDARD

This Court must consider four factors when ruling on Plaintiff's motion for preliminary injunction: (1) whether Plaintiff has shown a reasonable probability of success on the merits; (2) whether Plaintiff will be irreparably injured by denial of the relief; (3) whether granting

5

preliminary relief will result in even greater harm to the Defendants; and (4) whether

granting preliminary relief will be in the public interest. *Am. Exp. Travel Related Serv., Inc.*

*v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). "The burden lies with the plaintiff to

establish every element in its favor, or the grant of a preliminary injunction is inappropriate."

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504,

508 (3d Cir. 2005).

## DISCUSSION

Plaintiff's Motion for Preliminary Injunction requires the Court to address several

issues: (1) whether injunctive relief is available to Plaintiff despite the fact that Defendants

are generally subject to immunity from suit under the Eleventh Amendment; (2) whether

Plaintiff has a likelihood of success on the merits with regard to: (a) demonstrating a

property interest in playing an intercollegiate sport and (b) showing a deprivation of due

process; and (3) whether Plaintiff can demonstrate irreparable harm. The Court is

restrained by the concept that injunctive relief is an "extraordinary remedy, which should be

granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson &*

*Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir.2002) (quotation and

citation omitted).

### 1. Availability of Injunctive Relief

The Eleventh Amendment "bars private suits against a state sued in its own name

except in certain narrow circumstances." *Koslow v. Commonwealth of Pennsylvania*, 302

F.3d 161, 178 (3d Cir. 2002). In the present matter, however, Plaintiff's motion seeks prospective injunctive relief, which is permitted under the *Ex parte Young* doctrine. As the Third Circuit has noted, "[t]he Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law." *Id.* at 178.

Plaintiff and Defendants in the present action agree that Plaintiff's motion for prospective injunctive relief is not barred by the Eleventh Amendment, and accordingly, that such a motion is not constitutionally barred. The Court further agrees that the *Ex parte Young* doctrine permits Plaintiff to seek prospective injunctive relief, and Plaintiff will not be barred from seeking equitable relief.

## 2. Likelihood of Success on the Merits

A key element for a court deciding a motion for preliminary injunction is to determine the moving party's likelihood of success on the merits of the case. In the present matter, the focus of Plaintiff's argument in his moving brief is the contention that he was not provided with due process with regard to his one year athletic suspension. (*See* Pl.s' Br. in Supp. of Mot. at 4, ECF Dkt. 4-4.) Plaintiff asserts that when he waived his right to a formal hearing, he was not fully aware of the "extent of the sanctions he was facing," and would not have agreed to them without a hearing. (*See id.* at 5.)

Plaintiff maintains that he was presented with a Disciplinary Incident Notification form which memorialized the punishments Plaintiff agreed to for his admitted use of a controlled

7

substance. It mandated the following: "(1) deferred suspension until October 16, 2013; (2) parental notification; (3) complete the Marijuana 101 class by October 30, 2012; and (4) complete the Success Plan by October 30, 2013." (*See* Pl.'s Br. in Supp. of Mot. at 4; *see also* Disciplinary Incident Notification Form, Exh. A, ECF Dkt. 4-4.) Plaintiff insists that he was never informed of the possibility of an immediate one year suspension from the ESU varsity baseball team. (*See id.*) Plaintiff argues that he was intentionally misled into signing the form, which included his waiver of a right to a formal hearing. (*See id.* at 5.) As a result, Plaintiff asserts that he was denied due process rights accorded to him under the Fifth and Fourteenth Amendments.

Defendants, on the other hand, contend that Plaintiff did not suffer a constitutional deprivation because (1) Plaintiff has no property interest in participating on the ESU varsity baseball team and (2) the procedures afforded to Plaintiff were adequate to provide due process. (*See* Defs.' Br. in Opp. Mot. at 8, ECF Dkt. 14.)

In *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338 (3d Cir. 2004), the Third Circuit held that students do not possess a property interest in extracurricular or sporting activities for constitutional purposes. *Id.* at 344 ("no property interest exists in participation in extracurricular activities, including sports, as a general principle, under the United States Constitution"). As Defendants properly note, Plaintiff provides no contrary case law in support of the proposition that such a right exists. In fact, at oral argument, Plaintiff's

counsel did not point to a single case in which a court held that a student possesses a constitutional right to participate in extracurricular activities under similar circumstances.

Further, Defendants adequately demonstrate that they provided Plaintiff with the required procedural rights of "notice and a hearing." (*See* Defs.' Br. in Opp. Mot. at 8.) On this issue, it appears that Plaintiff's only contention is that he was not informed about the possibility that his deferred suspension carried with it a one year ban from extracurricular activities, including the varsity baseball team. *In Goss v. Lopez*, the Supreme Court noted that a student facing suspension must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. 565, 581 (1975). A student is not accorded the right to "secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583.

In the present matter, Plaintiff received substantial notice of the charges brought against him: (1) an oral notification on October 1, 2012, when he was first cited for smoking marijuana, and (2) a written letter on October 4, 2012, identifying the charges brought against Plaintiff and the specific provisions of the Student Code of Conduct of which he was accused of violating. On October 16, 2012, Plaintiff met with Jeter Smith to discuss the charges at his informal hearing. Plaintiff's own Complaint indicates that he had extensive conversations with ESU's Vice President of Student Affairs concerning his punishment and

that the decision to uphold the suspension of Plaintiff from the varsity baseball team was carefully weighed by this senior administrator. This satisfies the due process requirements set forth in *Goss, supra,* because Plaintiff was given the opportunity to confront the charges against him and to present his defenses to those who sat in judgment. In fact, Plaintiff's counsel acknowledged at oral argument that the informal hearing process accorded to Plaintiff met the due process requirements outlined in *Goss.* (*See* Hr'g Transcript of April 3, 2013 at 9.)

Further, Plaintiff's case rests upon the idea that the possibility that Plaintiff faced a suspension from the varsity baseball team needed to be included as part of the notice requirement. The Third Circuit's opinion in *Palmer v. Merluzzi,* 868 F.2d 90 (3d Cir. 1989), demonstrates that Defendants did not need to provide Plaintiff with an exhaustive list of potential penalties when those penalties are "knowable from previously published materials or are obvious from the circumstances." *Palmer,* 868 F.2d at 94. In the present matter, Plaintiff was a student at ESU and had a Student Handbook, which contained the Student Code of Conduct, in addition to the Student Athlete Handbook. Both are available on ESU's website. The Code of Conduct clearly states that the use of illegal drug use constituted a violation of the Code. The Student Athlete Handbook also states that "[v]iolations of the University's Student Code of Conduct may result in probation, suspension, or dismissal from the University and/or the Athletics Program." (*See* Student Athlete Handbook at 4.) It is clear that Plaintiff knew or should have known the consequences of his actions, as the

punishments for drug related infractions were readily available to him. Accordingly,

Plaintiff's argument that he was denied procedural due process protections is without merit.

### 3. Failure to Demonstrate Irreparable Harm

In order to succeed on a motion for preliminary injunction, the moving party must

demonstrate that it will suffer irreparable harm if its request for an injunction does not issue.

*See Am. Exp. Travel Related Serv., Inc*, 669 F.3d at 366. In the present matter, Plaintiff

fails to show irreparable harm.

Plaintiff argues that Defendants "unilaterally imposed an additional suspension of

Plaintiff's eligibility to play on the varsity baseball team," and that as a result of such actions,

he "will continue to suffer immediate and irreparable harm." (*See* Pl.'s Br. in Supp. Mot. at

6, ECF Dkt. 4-4.) At the core of Plaintiff's argument is the assertion that Plaintiff will be

"removed by Major League Baseball teams from the prospect list, for which there is no

adequate remedy at law." (*See* Pl.'s Br. in Supp. Mot. at 6.) Plaintiff further contends that if

he is forced to miss one baseball season for a non-injury related reason, it is likely that

Major League Baseball will no longer track his progress.

As the Third Circuit held in *Continental Group, Inc. v. Amoco Chem., Corp.*, 614 F.2d

351, 359 (3d Cir. 1980), a district court cannot issue an injunction to eliminate the possibility

of future injury. *See id.* at 359. An injunction can only issue after the presentation of

evidence showing "immediate irreparable injury" or "a presently existing actual threat." *Id.*

At oral argument, Plaintiff's counsel conceded that there is sparse evidence to support the contention that Plaintiff has, in the words of the Court, "at least a reasonable likelihood of becoming a professional baseball player." (*See* Hr'g Transcript of April 4, 2013, at 12-13.) Oral argument demonstrated the lack of concrete harm that would be suffered by Plaintiff absent the issuance of a preliminary injunction, as no team has provided a letter of intent to Plaintiff nor is there a "guarantee" that Plaintiff will be a professional baseball player. (*See id.* at 14.) As Defendants noted in their oral argument, predictions concerning possible harm to the future career of a college athlete do not rise to the level of concrete constitutional injury necessary to form the basis for a preliminary injunction. (*See id.* at 20.) "The interest in future professional careers must . . . be considered speculative and not of constitutional dimensions." *Colorado Seminary (University of Denver) v. Na. Collegiate Athletic Ass'n*, 417 F. Supp. 885, 895 (D. Col. 1976). Similarly, in *St. Patrick High School v. New Jersey Interscholastic Athletic Associations*, the District of New Jersey found:

> Several courts in this Circuit, as well as "other federal courts, have ... held that ineligibility for participation in interscholastic athletic competitions alone does not constitute irreparable harm." *Dziewa v. Pa. Interscholastic Ath. Ass'n*, 2009 U.S. Dist. LEXIS 3062, at * 17–18, 2009 WL 113419 (E.D.Pa. Jan. 16, 2009); *Sharon City Sch. Dist. v. Pa. Interscholastic Ath. Ass'n*, 2009 U.S. Dist. LEXIS 13037, at *4–8, 2009 WL 427373 (W.D.Pa.2009) (collecting cases; stating that "[b]ecause Plaintiffs failed to identify any irreparable harm, I need not hold a hearing prior to issuing an order denying injunctive relief"); *Cruz v. P.I.A.A.*, 2000 U.S. Dist. LEXIS 17521, at *2 (E.D.Pa. Nov. 15, 2000) (denying a request for preliminary injunctive relief because "[n]ot being able to play on game day is certainly a disappointment but does not in my judgment

constitute the type of harm warranting the extraordinary remedy of injunctive relief.").

*St. Patrick High Sch. v. New Jersey Interscholastic Athletic Associations*, No. 10-948, 2010 WL 715826, at * 4 (D.N.J. Mar. 1, 2010).

Given that Plaintiff has failed to provide any evidence to support his claim that he will face immediate, irreparable harm without the issuance of an injunction, the Court cannot grant Plaintiff's request for such extraordinary relief.

## 4. Public Interest and Balancing of Equities

The Court notes that the grant of a preliminary injunction in this matter is not in the public interest in light of the national policy proscribing the use of illicit drugs. Further, an evaluation of the equities in this case does not favor the issuance of a preliminary injunction.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Plaintiff's Motion for Preliminary Injunction shall be denied.

DATE: April 10, 2013

Robert D. Mariani
United States District Judge